IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ARNETRIUS BRANSON                                                      PLAINTIFF

v.                                          CIVIL ACTION NO. 3:21-cv-00100-CWR-LGI

JACKSON MUNICIPAL AIRPORT
AUTHORITY, LAWANDA HARRIS,
AND JOHN DOES 1-5                                                      DEFENDANTS

## ORDER

Before the Court is the Motion for Leave to Amend Answer and Affirmative Defenses [57], Motion for Protective Order [67], and Motion for Relief Regarding Discovery Violations [70] filed by Defendant Jackson Municipal Airport Authority ("Defendant" or "JMAA"). Plaintiff filed Responses in Opposition to both the Motion for Leave to Amend [61] and to the Motion for Relief Regarding Discovery Violations [73]. Defendants filed a Reply to each response. *See* Docs. [65] and [76], respectively.

Also before the Court are the Motions of Counsel to Withdraw filed by Plaintiff's attorneys Mike Farrell [66] and Joel Dillard and Jay Kucia [68].

The Court, having considered the submissions, the record and relevant law, finds that Defendants Motion for Leave to Amend Answer and Affirmative Defenses [57] is GRANTED, Motion for Protective Order [67] is rendered MOOT, and the Motion for Relief Regarding Discovery Violations [70] is GRANTED in part and DENIED in part, as discussed below. Further, the Motions of Counsel to Withdraw [66] and [68] are GRANTED, as discussed below.

## I.    Motion for Leave to Amend Answer and Affirmative Defenses [57]

On February 8, 2021, Plaintiff filed her Complaint [1], asserting a claim for wrongful termination from JMAA and alleging violations of the Taxpayer First Act, 26 U.S.C § 7623(d) and

1

the public policy of the State of Mississippi. Plaintiff filed her amended Complaint on February 19, 2021, and she served it on Defendants JMAA and Lawanda Harris on April 22, 2021. *See* Docs. [4], [8], and [9]. Defendants timely filed their Answer [12] to the Amended Complaint on June 14, 2021.[1] On July 30, 2021, the Court held a Rule 16(a) Case Management Conference, and on September 15, 2021, it entered the governing Case Management Order [25], which required the parties to file motions to amend pleadings or add parties by October 15, 2021. On April 12, 2022, Defendant JMAA filed the instant Emergency Motion for Leave to File Amended Answer and Affirmative Defenses (Urgent and Necessitous) [57].

   *A. Timeliness*

   Defendant seeks leave to amend its Answer and Affirmative Defenses to assert counterclaims against Plaintiff for breach of contract, conversion, and breach of fiduciary duty. *See* Doc. [57]. Defendant claims the Plaintiff, who was formerly employed as JMAA's Chief Financial Officer ("CFO"), impermissibly obtained privileged and/or proprietary documents from JMAA's premises before she resigned her position. *Id*. *See also* Doc. [4]. Defendant asserts it first became aware of the alleged theft on March 30, 2022, which was after the deadline to amend pleadings. Defendant claims it learned of the alleged theft when the Plaintiff attached copies of legal invoices and other documentation, that had been previously sent to JMAA by Attorney John Walker, in support of her response in opposition [51] to Defendant's *Motion to Quash Subpoena Duces Tecum served on John L. Walker, Esq.* [44]. *Id*.

   Attorney John Walker served as legal counsel for JMAA during the time that Plaintiff was employed as the company's CFO. *Id*. Defendant argues the aforementioned documents were protected by attorney-client privilege between JMAA and its legal counsel John Walker, Esq. Doc.

---

[1] On May 17, 2021, this Court granted Defendant's request for an extension of time to file their Answer. *See* Text-Only Order, dated May 17, 2021. *See also* Doc. [10].

[57] at 2. Further, Defendant asserts that on March 23, 2022, the Plaintiff produced 777 pages of documents that contained numerous privileged, proprietary and even personal documents that belong to the Defendant, including emails and memos from Attorney Walker containing legal advice. *Id*. at 2. Defendant notes that these documents were clearly labeled "Attorney-Client Privilege Document – Do Not Give or Disclose to any Non-JMAA Person." *Id*. at 2.

Defendant asserts the Plaintiff produced copies of the privileged or proprietary documents that she could have only obtained by removing said documents from JMAA's premises without authorization and producing them to her legal counsel, in violation of attorney-client privilege. *Id*. at 2-3. Defendant further contends the Plaintiff failed to produce these documents earlier in litigation, resulting in Defendant's late realization of these new facts which form the basis for the instant motion and proposed counterclaims. *Id*.

In Response [62], Plaintiff argues the Defendant's motion is untimely and unsupported. Further, Plaintiff contends the Defendant's motion violates important procedural rules. Doc. [62] at 7. Specifically, Plaintiff notes the Defendant failed to confer with the Plaintiff before filing the motion and also failed to file a memorandum with its motion, as required by the local rules. *Id*. at 8. Plaintiff contends the Defendant has not demonstrated good cause for the requested amendment, as required by Rule 16(b) of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 16(b) governs amendments of pleadings after a scheduling order deadline has expired. *S&W Enterprises v. SouthTrust Bank of Alabama*, NA, 315 F.3d 533, 536 (5th Cir. 2003). Once a scheduling order has been entered, "it may be modified only for good cause and with the judge's consent." *Castro-Colon v. Dean*, No. 2:19-CV-77-KS-MTP, 2019 WL 13199700, at *1 (S.D. Miss. Dec. 4, 2019) (quoting Fed. R. Civ. P. 16(b)). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal

3

standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id*. (quoting *S&W Enterprises*, 315 F.3d at 536). "In determining whether good cause exists, courts should consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id*.

"If the moving party establishes good cause to modify the scheduling order, the court decides whether to grant leave to file the amended pleading under Rule 15(a)." *Id*. "Rule 15(a)(2) dictates that courts should 'freely give leave to amend when justice so requires." *Id*. (internal brackets omitted). "This language evinces a bias in favor of granting leave to amend." *Id*. (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (internal quotations omitted). "The Supreme Court delineates five factors for a court to consider when deciding whether leave to amend a complaint should be granted: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Id*. (citing *Rozenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In its Reply [65], Defendant argues that untimeliness of its motion is a direct result of the Plaintiff's failure to comply with the discovery rules. *See* Doc. [65] at 8. Defendant asserts it timely sought all relevant documents through discovery, and in its propounded discovery requests, it specifically requested the Plaintiff produce "any and all emails, text messages, documents, or things of any kind that relate in any way to the allegations and/or claims in the Complaint." *Id*. at 9, *See also* Doc. [65-1], Ex. A., *Defendant's First Set of Interrogatories and Requests for Production of Documents to Plaintiff*, filed on August 11, 2021. Defendant notes the Plaintiff neither objected to the subject request nor indicated she was withholding documents. *Id*. at 9.

Instead, Defendant points out the Plaintiff indicated in her response that the requested documents would be produced. *Id*. In September 2021, Plaintiff submitted unsigned responses and only produced "a spreadsheet of Branson's alleged damages, her resume, an uncertified transcript of a recording she made of her termination meeting, and the recording of the meeting." *Id*. However, Defendant states the Plaintiff "waited until right before the discovery deadline to dump 767 pages of documents on the Defendants that included [the subject documents]." *Id*. Defendant also argues the Plaintiff had a duty to supplement her discovery responses without request of the Defendant but elected to withhold the privileged documents. *Id*.

This Court rebuffs Plaintiff's attempts to minimize the severity of these new facts presented by the Defendant, and it also rejects her attempts to transfer her obligation to timely produce the subject documents onto the Defendant by claiming it should have become aware sooner. *See* Fed. R. Civ. P. 26(a), (b), and (e). But for the Plaintiff attaching the privileged documents to its response in opposition to the Motion to Quash the Deposition of John Walker [51], it is not likely the Defendant could have discovered that the documents had been removed from its premises any sooner than when it was realized. Thus, Plaintiff's arguments that Defendants "had the ability to know whether Plaintiff had taken documents belonging to them, . . . as the subject documents were their own electronic documents, and any problem should have been evident in their own system" is disingenuous at the very least. Doc. [62] at 8. The undersigned finds this argument particularly disturbing, because Plaintiff makes no attempt to refute Defendant's claims that she removed privileged documents without authorization nor does she assert that  her counsel's failure to timely produce those documents was merely oversight or related to Plaintiff's late production of documents to her own counsel. Instead, Plaintiff urges this Court to accept that the Defendants "were actually or constructively aware of the facts giving rise to their counterclaims in February

5

2020." *Id*. As noted in Defendant's Reply brief, Plaintiff "produced unsigned discovery responses in September 2021 and supplemented with signed responses on October 7, 2021." Doc. [65] at 9, fn. 5. The Plaintiff's supplemental production, which included 767 documents was made **one week** before the deadline to file amended pleadings expired, and the voluminous supplemental production contained some privileged documents. *Id*. Also, the other alleged privileged or proprietary documents were attached to Plaintiff's brief [51], which was not filed until March 30, 2022, some five months after the deadline to amend pleadings.

Based on the foregoing, this Court must agree that "JMAA would have had no way of knowing that Branson engaged in this misconduct until she produced . . . such documents to it." Doc. [65] at 10. Accordingly, this Court finds the Defendant's failure to timely seek leave to amend its answer is not the result of undue delay, bad faith or some other dilatory motive. In other words, this Court believes the Defendant has demonstrated good cause for its untimely request.

Likewise, the Court finds the requested amendment is important to the Defendant's defenses and counterclaims and denying the amendment could result in prejudice to the Defendant. While the Court also recognizes the potential prejudice to the Plaintiff in allowing the amendment, it finds that the Defendant's potential prejudice outweighs the Plaintiff's contention that "these amendments . . . would require [her] to undertake a great deal of discovery to defend herself," and the unrelated claims "would distract Plaintiff from litigating her wrongful termination." Doc. [62] at 10. The Court further addresses this position *infra*, in its discussion of supplemental jurisdiction. Finally, the Court finds once Defendant's amended answer is filed, this matter will almost certainly require a continuance, which will cure any potential prejudice to the parties. Having considered the standards under Rule 16(b) and Rule 15(a), this Court finds Defendant should be granted leave to amend its answer.

B. *Supplemental Jurisdiction*

In her Response [62] to Defendant's Motion for Leave to Amend, Defendant challenges this Court's jurisdiction over Defendant's proposed state-law counterclaims. Plaintiff urges this Court to deny Defendant's motion to amend, arguing this Court lacks jurisdiction over the proposed state-law counterclaims. Doc. [62] at 1-2. Plaintiff contends "it would be unconstitutional and unwise" for this Court to exercise supplemental jurisdiction over the proposed counterclaims, as these state-law claims are not part of the same case or controversy. *Id*. at 2. Plaintiff asserts her case was brought under federal question jurisdiction, pursuant to the Taxpayer First Act, and the proposed state-law counterclaims are for breach of confidentiality, breach of fiduciary duty and conversion, which have nothing to do with the Plaintiff's wrongful termination claim. *Id*. at 3-4. Finally, since all parties reside in Mississippi, Plaintiff argues this Court has no diversity jurisdiction over the proposed counterclaims.

Defendant argues its proposed counterclaims are compulsory under Rule 13(a), as the "claims arise out of the transaction or occurrence that is the subject matter of the opposing party's claim." Doc. [65] at 2 (quoting Fed. R. Civ. P. 13(a)).

The question to ask is "whether the state law claims are so related to a federal claim as to form part of the same case or controversy under Article III of the Constitution – rather than . . . whether the counterclaim is compulsory or permissive." Therefore, determining whether Defendant's counterclaims are compulsory for purposes of Rule 13(a) is relevant to, but not determinative of, the Court's subject matter jurisdiction over the counterclaims. The first step in the analysis is determining whether the counterclaims are compulsory. *Cordero v. Voltaire, LLC*, No. A-13-CA-253-LY, 2013 WL 6415667, at *3 (W.D. Tex. Dec. 6, 2013).

"The appropriate inquiry in determining whether a counterclaim is compulsory is to ask:

7

> 1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; 2) whether res judicata would bar a subsequent suit on [JMAA's] claim absent the compulsory counterclaim rule; 3) whether substantially the same evidence will support or refute [Plaintiff's] claim as well as [JMAA's] counterclaim; and 4) whether there is any logical relationship between the claim and the counterclaim.

*Fit Exp., Inc. v. Cir.-Total Fitness*, No. CIVA 1:07CV62-SA-JAD, 2008 WL 4450290, at *2–3 (N.D. Miss. Sept. 29, 2008) (citing Fed. R. Civ. P. 13) (citations omitted). "The counterclaim is compulsory if there is an affirmative answer to **any** of the four questions." *Id.* at 3. (Emphasis added).

Defendant is confident the proposed counterclaims are compulsory, as the claims affirmatively answer questions 1, 3, and 4. Doc. [65] at 2. On the other hand, Plaintiff argues "the mere fact that the parties were once linked by an employer-employee relationship is insufficient when the claims would stir such different issues and rely on such different facts and evidence." Doc. [62] at 3 (quoting *Cordero* at *5) (holding the only compulsory claim in this case was the counterclaim against plaintiff Cordero for fraud, as the counterclaim for fraud and the underlying claim for unpaid overtime wages relied upon the same evidence or set of facts)). In *Cordero*, the Court found that "the evidence needed to prove defendant's counterclaims for theft, conversion, and breach of fiduciary duty [was] entirely different than the evidence needed to prove plaintiffs' FLSA claim. Defendant's allegations that plaintiffs committed theft and conversion by unlawfully taking valuable equipment and materials and the resulting breach of their fiduciary duties plainly does not rest on the same operative facts as plaintiffs' FLSA claim that defendant failed to pay them overtime wages." *Id.* at *5. However, the Court found that plaintiff Cordero, who was Vice President of the defendant's construction company, was "involved in a scheme to defraud and steal from defendant, which included falsifying and inflating the time [he and the other plaintiffs] claimed to work for the defendant. *Id.* at *4.

8

Although the defendant in *Cordero* asserts similar counterclaims as those proposed by the Defendant, the Court arrives at a different outcome here. Unlike *Cordero*, the primary issue arises from Plaintiff's claim that she was wrongfully terminated, in violation of Taxpayer First Act, based on a single incident – "report[ing] criminal tax fraud, evasion and/or misreporting" to the IRS. Doc. [62] at 3. Under the pertinent act, both the employer and employee have burdens or proof. Doc. [65] at 2. Obviously, the Plaintiff seeks to prove the sole reason for her termination was because she reported to the IRS the alleged tax fraud or evasion by JMAA employees. Plaintiff's evidentiary support will mainly derive from the events that took place on February 20, 2020, when Plaintiff met with the Board of Commissioners and was given the opportunity to resign in lieu of termination. Doc. [62] at 4. Under the Taxpayer First Act, "even if Branson succeeds in making a prima facie showing of a violation, she cannot recover if Defendants show, by clear and convincing evidence, that the termination would have occurred in the absence of her alleged report." Doc. [65] at 2 (citing 26 U.S.C. § 7623(d)(1) and 49 U.S.C. §42121(b) (for provisions regarding legal burdens of proof)). Under its burden of proof, Defendant will rely upon evidence of Plaintiff's actions that occurred both before and after her termination, including her alleged employment misconduct of theft, to prove its counterclaims. The fact that Plaintiff's claims and Defendant's affirmative defense (after-acquired defense) and counterclaims rely on 1) the same facts and law and 3) substantially the same evidence, supports both the Plaintiff's claims and Defendant's counterclaims, which favors a finding that the proposed counterclaims are compulsory under Rule 13(a).

As to the fourth question, the Court finds there is a logical relationship between the claim and counterclaim. Plaintiff attempts to distance her claims from the proposed counterclaims by arguing her wrongful termination claim is distinct from Defendant's counterclaims for breach of

contract, conversion, and breach of fiduciary duty. However, if the Plaintiff had not attached JMAA's privileged or proprietary documents in support of her own claims, JMAA may not have realized that the Plaintiff was relying on its documents to aid in establishing her claims against Defendant. This alone shows there's a logical relationship between the claims and the proposed counterclaims, as Plaintiff's alleged "wrongdoing during her employment is central to both her claims and to the Defendant's after-acquired evidence affirmative defense and the resulting counterclaims." Doc. [65] at 3.

Defendant also asserts this Court has the discretion to decline supplemental jurisdiction, if it finds

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id*. at 3. (Citing 28 U.S.C.A. § 1367). Defendant focuses on factors one and two, and it argues the Plaintiff has shown no reason for this Court to decline to hear its proposed counterclaims. *Id*. at 4.

*Novel and Complex*

Plaintiff claims that the proposed counterclaims are novel or complex, as the state-law claims require careful consideration of competing policy concerns, as it pertains to JMAA's nondisclosure agreement. Doc. [62] at 5. Defendant contends the proposed counterclaims are neither novel nor complex. Rather, it believes the counterclaims are straightforward, as the claims derive from Plaintiff's wrongdoing of removing privileged documents without authorization. The Court agrees the counterclaims are not novel or complex and can be handled in this instant action.

*Predominance of State-law Claims*

Plaintiff argues the proposed state-law counterclaims will constitute four of the five claims

10

in this case, and the claims will predominate both legally and factually and expand beyond a "simple case about [Plaintiff's] termination." Doc. [62] at 6. Defendant contends the state-law counterclaims will not predominate, because the facts and issues raised in the counterclaim will already be considered with Defendant's after-acquired evidence defenses, relevant information of Plaintiff's employment and her termination. Doc. [65] at 6. The Court finds the claims and proposed counterclaims are substantially related, and the state-law claims will not predominate over the federal claim .

The third and fourth factors are inapplicable to this case. The Court also considers the common law factors related to supplemental jurisdiction. The Court finds the factors of judicial economy, convenience and fairness weigh in favor of exercising supplemental jurisdiction. The Court also finds there is a logical relationship between Defendant's counterclaim and Plaintiff's claims, as the counterclaims arise from the core facts of Plaintiff's claim. Thus, separating the federal and state-law claims weighs against judicial economy, convenience and fairness. As to comity, this Court has no need to make new state policy, as the allegations to be raised in the counterclaim will be governed by Mississippi's existing laws regarding employee misconduct or alleged theft.  This Court finds that it has supplemental jurisdiction over the Defendant's proposed counterclaims.

## II.    Motion for Protective Order [67]

On May 5, 2022, Defendant JMAA filed a Motion for Protective Order [67], seeking to quash the Rule 30(b)(6) deposition of JMAA that it alleges the Plaintiff unilaterally noticed for May 10, 2022. Defendant asserts it informed the Plaintiff, via email on April 25, 2022, that the Rule 30(b)(6) deposition would need to be rescheduled to another date, as the witnesses necessary for the deposition were unavailable on the date provided in the notice. *Id*. at 2. As of the date of

11

Defendant's motion, the Plaintiff had not responded to Defendant's request to reschedule. *Id*. The instant motion followed. Defendant noted Plaintiff's counsel filed a motion to withdraw as counsel on May 4, 2022, and since it had not received a reply, Defendant filed the instant motion out of an abundance of caution. *Id*.

A review of the docket reveals the Plaintiff did not respond to the instant motion. Also, it appears the Rule 30(b)(6) deposition of JMAA has not been taken nor has it been re-noticed for a later date. On August 16, 2022, this Court terminated all deadlines and stayed the pretrial conference and jury trial, pending ruling on the various pending motions addressed herein. *See* Text-only Order, dated August 16, 2022. In light of the stay and termination of deadlines, the instant motion [67] is rendered MOOT, as the parties have not engaged in any further discovery. This Court will lift the stay and reset deadlines upon resolution of the pending various motions, at which time the Rule 30(b)(6) deposition of JMAA can be addressed.

### III.    Motions of Counsel to Withdraw [66], [68]

On May 4, 2022, lead counsel for Plaintiff, Mike Farrell filed a motion for leave to withdraw [66] as counsel of record for Plaintiff, citing irreconcilable conflicts between he and the Plaintiff. In his motion, Attorney Farrell represented that Plaintiff would continue to be represented by other counsel of record, Joel Dillard. *Id*. On May 5, 2022, Plaintiff's other counsel of record, Attorneys Joel Dillard and Jay Kucia also filed a Motion to Withdraw as Counsel for the Plaintiff [68]. In their motion, Attorneys Dillard and Kucia represent that Mike Farrell was lead counsel for the Plaintiff, and he withdrew one day before. *Id*. Counsel asserts that, pursuant to the representation agreement between themselves and Plaintiff's lead counsel, Attorney Farrell was responsible for one-half of the workload, for directing all the work and for advancing costs of the litigation, while Attorneys Dillard and Kucia were collectively responsible for the other half of

the workload in this case. *Id*. Attorneys Dillard and Kucia assert continuing representation without Attorney Farrell requires a fundamental change to the terms of representation, which would impose an unreasonable burden on the law firm of Joel F. Dillard, P.A. *Id*. Attorneys Dillard and Kucia also submit they have not been in agreement on the course of litigation in this case. *Id*.

On May 11, 2022, the Court entered an Order [69] deferring its ruling on the motions to withdraw, until such time as counsel of record for the Plaintiff complied with the Court's directives to deliver Plaintiff's case file to her within thirty (30) days of the Order and provide the Court with Plaintiff's contact information. On June 2, 2022, Attorney Dillard filed a Certificate of Mailing, wherein he certified that he mailed Plaintiff's case file and also provided Plaintiff's contact information. *See* Doc. [77].

On June 7, 2022, Attorney Brandon Dorsey filed a Notice of Appearance on behalf of Plaintiff in this matter. The Court finds that the Motions to Withdraw as Counsel for the Plaintiff [66] and [68] are well-taken and hereby GRANTED as to Attorneys Farrell, Dillard and Kucia. Attorney Dorsey shall remain in place as counsel of record for Plaintiff.

## IV.    Motion for Relief Regarding Discovery Violations [70]

### A.   *Relevant Procedural History*

On May 11, 2022, this Court held a discovery conference regarding alleged inappropriate contact by Plaintiff's counsel, Attorney Farrell, with former employees or commissioners at JMAA. *See* Minute Entry, dated May 11, 2022. After the discovery conference, the Court ordered the parties to brief the issue of alleged inappropriate contact. *See* Text-only Order, dated May 11, 2022. Parties filed their respective briefs. Before the Court is the *Motion for Relief Regarding Discovery Violations* [70], filed by Defendant JMAA, on May 18, 2022. The Plaintiff filed her Response [73], and Defendant filed its Reply [76] in support of the initial motion.

B.  *Arguments*

Defendant seeks monetary sanctions against Plaintiff's counsel, Attorney Farrell, for alleged violations of the discovery rules and the Mississippi Rules of Professional Conduct. Defendant also request a protective order tailored to the claims in its motion. Defendant accuses Attorney Farrell of communicating, *ex parte*, with James Henley ("Henley"), a former-Commissioner of JMAA, who was a member of JMAA's Board of Commissioners when the board voted to allow Plaintiff the opportunity to resign from her position as CFO, or to terminate her if she refused to resign. Doc. [71] at 1. Plaintiff resigned from her position in lieu of termination on or about February 20, 2020. *Id*. at 2. At the time of Plaintiff's resignation, the Board of Commissioners consisted of members LaWanda Harris, Robert Martin, Henley, and Lucius Wright. *Id*. at 1. On May 15, 2020, Plaintiff filed a complaint with the U. S. Department of Labor, alleging "retaliatory employment practices in violation of the whistleblower provisions of . . . the Taxpayer First Act." *Id*. at 2 (quoting language from U.S. Department of Labor's notice to JMAA, attached to Defendant's motion as Doc. [70-1], Exh. "A"). On February 8, 2021, Plaintiff filed the instant lawsuit, against JMAA and LaWanda Harris, based on the claims of wrongful termination, under the Taxpayer First Act and against the public policy of the State of Mississippi. *Id*. at 2. *See also* Complaint [1] and Amended Complaint [4].

Counsel for JMAA asserts it began investigating Branson's claims when it received notice from the U.S. Department of Labor, and Counsel claims she relied on Henley and the other Commissioners for assistance with the investigation, both before and after Plaintiff filed the subject lawsuit in this matter. *Id*. Specifically, Counsel for Defendant states she relied on LaWanda Harris, Henley and Michael Gater for assistance, which included conversations regarding litigation status and strategy. *Id*. *See also* Doc. [70-4] at ¶ 4, Exh. "D," Declaration of James L. Henley, Jr.

14

(wherein Henley attests that he continued to participate in strategy sessions with counsel for Defendant). Importantly, Henley left the Board of Commissioners on May 4, 2021. *Id*. Counsel for Defendant submits that she learned, on May 3, 2022, that Attorney Farrell contacted Henley and Gater on several occasions without first alerting Defendant's counsel. *Id*. at 2-3. Defendant submits a declaration from Henley attesting to the following interactions with Attorney Farrell:

> Ms. Branson's attorney, Mike Farrell, has reached out to me on several occasions to discuss this matter. In April 2022, Attorney Farrell came to my office to discuss the facts surrounding Ms. Branson's employment at JMAA. During our meeting, I told Attorney Farrell I would not be a good witness for him because I believed Ms. Branson should have been terminated much earlier due to her inability to effectively perform her job duties. Attorney Farrell proceeded to ask me questions about how I and the other Commissioners voted regarding the same. These discussions, of course, occurred during executive session. He also asked me about previous discussions the Board undertook in executive session regarding Ms. Branson's job performance.
>
> On May 3, 2022, I forwarded a draft affidavit Attorney Farrell sent me to JMAA's counsel, LaToya Merritt. I believed she needed to be informed he was trying to get me to execute an affidavit which was not true and was directly related to matters discussed in executive session by the Board of Commissioners. The affidavit was a clear distortion of my conversation with Attorney Farrell.
>
> After receiving Attorney Farrell's email with the draft affidavit, I responded to Attorney Farrell stating he would need to depose me since the affidavit was clearly not accurate. Attorney Farrell continued to email and call me asking if I would be willing to submit to a recorded statement under oath. Even after I told him he would need to go through Attorney Merritt to schedule a deposition, he continued to call. I found his repeated phone calls harassing.

Doc. [70-4] at ¶¶ 5-7, Exh. "D," Declaration of James L. Henley, Jr.

Based on the foregoing allegations, Defendant moves for sanctions under Local Rule 83.1(c), alleging attorney misconduct, in violation of the Mississippi Rules of Professional Conduct. Defendant contends both Henley and Michael Gater were listed on Defendant's pre-discovery disclosures, as "an individual likely to have discoverable information that the disclosing party may use to support their claims or defenses," and that both "may be contacted through

counsel." Doc. [71] at 2; Doc. [70-5], Exh. "E," *Defendants Jackson Municipal Airport Authority and LaWanda Harris's Pre-Discovery Disclosures of Core Information*, filed with this Court on August 13, 2021. *See* Doc. [21], Notice of Service. Plaintiff argues that the Comment to Rule 4.2 of the Mississippi Rules of Professional Conduct prohibit Attorney Farrell's communication with Henley, because Henley falls under the category of "any other person whose act or omission in connection with [the] matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization." *Id*. (citing M.R.P.C. 4.2, cmt.). As such, Plaintiff argues that Attorney Farrell's *ex parte* communications with Henley were improper and forbidden. Defendant contends "under the doctrine of respondeat superior, vicarious liability is imputed from an employee to an employer when 'the employee's acts were within the scope of the authority conferred.'" *Id*. at 6. Since Henley was acting within the scope of his authority as Commissioner when he voted to terminate Branson, Defendant contends Plaintiff's *ex parte* contact was for the purpose of holding JMAA liable for the very action that makes up the basis of Plaintiff's claims against JMAA. *Id*.

Further, Defendant argues Attorney Farrell sought information from Henley regarding the discussions of the Commission, which Defendant contends are confidential, because information discussed by a public board during an executive session is confidential and not generally available to the public. *Id*. at 8. Defendant asserts both Henley and Human Resources Director Michael Gater were privy to privileged and confidential information regarding the instant lawsuit, including information discussed during the executive session regarding Plaintiff's termination, the litigation strategy sessions with JMAA's legal counsel Attorney John Walker and Attorney Merritt, and also during the investigation of stage of the litigation. *Id*. Because of this, Defendant asserts Henley and Michael Gater fall within the scope of former employees, who are (partially) off limits to *ex*

16

*parte* communications. Based on the foregoing, Defendant moves the Court to levy monetary sanctions against Attorney Farrell.

Alternatively, Defendant moves this Court to find Attorney Farrell's conduct sanctionable under Rule 4.4(a), if it does not find that Rule 4.2 prevented the *ex parte* communications with Henley and Michael Gater. *Id*. at 10. Defendant asserts Attorney Farrell violated Rule 4.4(a) in his dealings with Henley and Michael Gater as unrepresented individuals, because the rule prohibits a lawyer from using "means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person." *Id*. Defendant points out that Attorney Farrell repeatedly contacted Henley requesting a recorded statement and execution of an affidavit that Henley declares "was not true and was directly related to matters discussed in executive session by the Board of Commissioners [and] . . . was a clear distortion of my conversation with Attorney Farrell." Defendant submits Attorney Farrell's actions were both harassing, violative of Henley's legal rights, and harmful to JMAA *Id*. at 10-11.

In addition to monetary sanctions against Attorney Farrell, Defendant seeks a protective order providing the following:

a. Attorney Farrell and Plaintiff's other attorneys (including any future attorneys given the pending withdrawal motions) are prohibited from any future contact with Defendants, Defendant JMAA's current Commissioners, Defendant JMAA's former Commissioners who were involved in Plaintiff's termination, Defendant JMAA's current employees who fall under Rule 4.2's protections including CEO Paul Brown, and Defendant JMAA's former high-level employees who were directly involved in Plaintiff's termination and who were privy to privileged information and litigation strategy including Michael Gater;

b. Attorney Farrell produce the originals and any copies of notes, recordings, emails, or any other documentation of contact with the above-referenced individuals;

c. Attorney Farrell provide to the Court and undersigned counsel the names of any individuals that he shared any information gathered from these improper

communications with and what he shared; and

d. Plaintiff be prohibited from using any information gathered from these improper communications in this litigation.

*Id*. at 11.

In her Response [73], the Plaintiff first points out that "various states have widely diverging interpretations of Rule 4.2," and she argues the Defendant has primarily relied on cases that follow the minority view of restricting contact with former employees. Doc. [73] at 1-2. Plaintiff asserts the controlling authority for the issue before this Court can be found in District Judge Wingate's order in *Durham v. Advance Stores Co.*, 2007 WL 2903206 (S.D. Miss. 2007), wherein Judge Wingate adopted the Mississippi Bar Association's Ethics Opinion No. 215 and "aligned [his holding] with majority view, as well as with the formal opinion of the state bar association," when he concluded that "Rule 4.2 of the Mississippi Rules of Professional Conduct does not apply to former employees" and also allowed plaintiff's counsel to "interview former employees of Advance, *ex parte*, provided he does not address areas which are subject to any privilege." *Id*. Plaintiff argues that Mississippi's law on this point is clear, yet Defendant urges this Court to ignore its own precedent and follow the interpretations of other jurisdictions  of the ethical rules regarding the subject issue. *Id*. at 3. Plaintiff notes the Defendant mainly relies on minority authority from Pennsylvania, Arizonia, Connecticut and elsewhere. *Id*.

Plaintiff, while recognizing the "valid concern in preventing former corporate employees from inadvertently disclosing to an interviewing attorney privileged material obtained . . . during the course and scope of employment," asserts that the "interest does not, however, justify a blanket ban on communications and can be guarded by less stringent measures. *Id*. (citing Ethics opinion No. 215). Plaintiff also states, "when the issue first came up [Attorney] Farrell suggested to JMAA counsel an agreed protective order that would prohibit questions into privileged areas[, but] JMAA

18

counsel rejected that suggestion even though it followed Judge Wingate's ruling." *Id*. at 3, fn. 3. Plaintiff argues rather than limiting contact with former employees, the current rules limit questions that can be asked of a former employee, such of those protected by attorney-client privilege. *Id*. at 4.

Plaintiff contends based on the holding in *Durham* and the Ethics Opinion No. 215, the burden was on JMAA to seek protection of privileged information possessed by Henley and/or Michael Gater. *Id*. She again relies on Ethics Opinion #215, asserting "it seems clear that counsel for the corporation would be aware of the former employees that possess such information and, in these circumstances, seek court protection." *Id*. (quoting Ethics Opinion No. 215). Plaintiff also argues that neither JMAA nor Henley, in his affidavit, claim that Attorney Farrell asked Henley any improper questions about privileged communications with JMAA's attorneys. *Id*. at 5. Plaintiff contends that JMAA claims Attorney Farrell prepared for Henley an affidavit that was "a vastly distorted version of their conversations," yet JMAA fails to support this allegation by identifying inaccurate or distorted facts. *Id*. Plaintiff further points out that Henley himself is a member of the bar, who willing met with Attorney Farrell in his office and discussed the facts of this case. *Id*.

C. *Court's Analysis*

Pursuant to Rule 83.1 of the governing Local Court Rules, "the court may, after notice and an opportunity to show cause to the contrary, if requested, censure or reprimand any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules, the Mississippi Rules of Professional Conduct, or any other rule of the court." L. U. Civ. R. 83.1. Further, Rule 4.2 of the Mississippi Rules of Professional Conduct provides: "in representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent

19

of the other lawyer or is authorized by law to do so." M.R.P.C. Rule 4.2. The comment to Rule

4.2, in pertinent part, provides:

> In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, **and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization**. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule.

M.R.P.C., Rule 4.2, cmt. (Empasis added). "Neither the text of Rule 4.2 of the Mississippi Rules

of Professional Conduct, nor the official comment references former employees. However, the

Mississippi Bar Association's Formal Opinion No. 215 (March 4, 1994) offers the following

insight:

> In representing a client, a lawyer may ethically communicate, *ex-parte*, with an unrepresented individual that was formerly employed by a represented party. Neither the text nor Rule 4.2 prohibits such contacts; however, other professional rules of conduct proscribe attorney's conduct in dealing with unrepresented individuals.

*Colborn v. Hardee's Food Sys., Inc.*, No. 2:10CV59-P-S, 2010 WL 4338353, at *1 (N.D. Miss.

Oct. 27, 2010). In *Colborn*, the plaintiff's counsel sought permission of the court to communicate

*ex parte* with the unrepresented former employees of defendant Hardee's. In this slip in fall case,

the court, granted plaintiff permission to have *ex parte* contact with two of the three former

employees. *Id*. However, it denied plaintiff's request to contact the third employee, "because Ms.

Gordon, the employee responsible for mopping the women's bathroom, [was] a person whose acts

or omissions in mopping and placing the wet floor signs could be imputed to Hardee's." *Id*. The

Court ordered Hardee's "to make Ms. Gordon available for an informal interview or formal

deposition with counsel for both parties present." *Id*. at *2.

The *Colborn* court relied on the earlier order of District Court Judge Wingate in *Durham*

20

*v. Advance Stores Co., Inc.*, No. 3:04-cv-199-HTW-LRA, 2007 WL 2903206, for the following portion of that court's analysis.

> Three arguments readily come to mind why counsel may conduct *ex parte* interviews of the former employees of an adverse corporate party: first, the language of Rule 4.2 does not cover former employees; secondly, no current attorney-client relationship exists; and thirdly, former employee's statements cannot bind the corporation and are not excluded from the hearsay rule as admissions.

*Durham* at *1 (citing as persuasive authority Merrick T. Rossein, Employment Discrimination Law and Litigation § 14:54. *See, e.g.*, *Action Air Freight, Inc. v. Pilot Air Freight*, 769 F.Supp. 899 (E.D.Pa.1991); ; *Hanntz v. Shiley, Inc.*, 766 F.Supp. 258 (D.N.J.1991); *In the Matter of Torch*, 1996 WL 185765 (E.D.La.)).

In *Durham*, the defendant sought dismissal, or in the alternative, appropriate sanctions against plaintiff's counsel for violating Rule 4.2, by communicating *ex parte* with two of defendant's former store managers without consent of defense counsel. *Id*. The court first noted that it "found no Mississippi case which squarely addresses the issue of whether an opposing party's counsel may contact a former employee of an adverse party corporation without consulting the former employer's counsel." *Id*. However, it offered that "although the jurisprudence on this issue has not reached a unanimous consensus throughout the country, overwhelming authority seems to permit such communication." *Id*. (citations omitted). Like the court in *Colborn*, the *Durham* court also relied on Mississippi Bar Association's Formal Opinion No. 215 (March 4, 1994) for insight. *Id*.

Ultimately, the court in *Durham* found that the plaintiff failed to establish that the communication was improper. *Id*. at *2. The court declined to "consider any statements from [the former store managers] as an 'admission against interest' as [the former store managers] were not agents of [defendant] Advance at the time of their interview by plaintiff's counsel." The Court

21

pointed out the former store managers' knowledge "is subject to discovery by [the plaintiff] without the necessity of Advance's approval, unless the court is advised that their averments will impact upon any privileged communication with corporate counsel." *Id*. The court also found that the defendant failed to establish irreparable prejudice, warranting dismissal, as the defendant "ha[d] not shown how the information learned by plaintiff's counsel will not be produced eventually during proper discovery, through depositions of, or interrogatories to, the[] two witnesses or others." *Id*. Thus, the court declined to dismiss the lawsuit or impose sanctions against plaintiff's legal counsel, and it held that plaintiff's counsel may interview the former employees of defendant, *ex parte*, provided he "does not address areas which are subject to any privilege." *Id*.

*Durham* has been widely relied upon since the order was entered in 2007. The case is often cited for the purpose of reaffirming that Rule 4.2 does not prohibit *ex parte* contact with a represented organization's former employees. But, also for the purpose of using this language as a segue into a discussion of the other privileges or rules that may apply to *ex parte* communications with former employees. For example, the Court in *United States v. Mississippi*, No. 3:16-CV-622-CWR-FKB, 2018 WL 4956658, at *3 (S.D. Miss. Oct. 12, 2018) pointed out that depending on the identity of the interviewee, the physician-patient privilege, attorney-client privilege, or Mississippi Rule of Professional Conduct 1.6 may be triggered. *Id*. at *4. In *United States v. Mississippi*, the court, on motion of the parties for determination of which, if any, current and former State of Mississippi employees could be interviewed *ex parte*, relied on Rule 26 of the Federal Rules of Civil Procedure for addressing the disclosure requirements of current and former employees of an organization. *Id*. at *5. In this case, the court laid out the following framework for disclosure of *ex parte* interviews.

> First, the United States must disclose the identity of any State interviewees who it
> learns are likely to have discoverable information. *See* Fed. R. Civ. P.

26(a)(1)(A)(i); *see also Brody v. Zix Corp.*, Civil Action No. 3-04-cv-1931-K, 2007 WL 1544638, at *1 (N.D. Tex. May 25, 2007) (finding that the attorney work product doctrine does not shield disclosures required by Fed. R. Civ. P. 26(a)(1)(A)(i)). The United States must also disclose the subject matter of that interviewee's discoverable information. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Conversely, if the United States interviews someone who it learns is unlikely to have discoverable information, Rule 26(a)(1)(A)(i) does not require it to disclose that individual's identity.

Second, the United States must supplement its disclosures in a timely manner. *See* Fed. R. Civ. P. 26(e)(1)(A). Under the circumstances, the Court finds that Mississippi's request that the United States supplement, if necessary, within a week of an interview is reasonable. The Court orders that the United States supplement its responses within one week of any interview of a current or former State employee if as a result of that interview the United States learns that disclosure is required under Rule 26(a)(1)(A)(i). *See* Fed. R. Civ. P. 26(e)(1)(B) (permitting the Court to set a deadline for supplementation).

*Id*. (Emphasis added). The court in *United States v. Mississippi* denied "Mississippi's request that the United States produce a copy of all interviewee statements," finding that "such statements, particularly an attorney's summary of a witness's interview, constitute work product and are not ordinarily discoverable." *Id*.

Based on the Court's reading of the controlling Mississippi authority, the undersigned declines to grant the requested sanctions against Attorney Farrell for the alleged violation of Rule 4.2. Neither Rule 4.2 nor the Comment to the rule expressly prohibit *ex parte* communication with an unrepresented individual, who was formerly employed by a represented party, without first contacting the former employer's counsel. As it pertains to Defendant's assertion that the *ex parte* contact was improper because Henley as former commissioner and Michael Gater as former HR Director were privy to privileged information, the Court finds the Defendant has pointed to no facts to suggest that either Henley or Michael Gater provided privileged information in response to Attorney Farrell's interview questions, resulting in irreparable harm or prejudice.

Defendant also claims the *ex parte* communication was improper, because Henley falls into

23

the category of "any other person whose act or omission in connection with [the] matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization" as provided in the Comment to Rule 4.2. Defendant relies on *Colborn* for its claim that Henley was off limits to *ex parte* communication, because his acts or omissions could be imputed to the company. As provided above, the court in *Colborn* denied plaintiff's request for *ex parte* contact with a former employee, because the employee was responsible for mopping the women's bathroom, and her acts or omissions in mopping and placing the wet floor signs could be imputed to the defendant. While the undersigned follows Defendant's logic and understands its reliance on *Colborn*, this Court must rely on *Durham* in rejecting this argument for purposes of imposing sanctions. It is important to note the facts of *Durham* are more on point with the facts of the instant case than *Colborn*. In *Colborn*, the matter was before the Court on plaintiff's motion for leave to communicate *ex parte* with the unrepresented former employees of defendant Hardee's. In *Durham*, the defendant sought dismissal, or in the alternative, appropriate sanctions against plaintiff's counsel for violating Rule 4.2, by communicating *ex parte* with two of defendant's former store managers without consent of defense counsel.

In *Durham*, the court declined to consider any statements made by the former store managers as an "admission against interest" since the former managers were no longer agents of defendant at the time of their interviews by plaintiff's counsel. Furthermore, the *Durham* court also recognized that a "former employee's statements cannot bind the corporation and are not excluded from the hearsay rule as admissions." *See* Durham at *1, *supra*. The undersigned notes the Defendant has pointed to no particular act or omission that could be imputed to JMAA as a result of any privileged information divulged to Attorney Farrell during his *ex parte*

24

communication with Henley. It is worth noting here that Henley, as an attorney himself, was sophisticated enough to suggest that Attorney Farrell pursue his deposition, in order to obtain the information he sought.

The *Durham* court also pointed out that a former employee's knowledge would be subject to discovery by the plaintiff, without the defendant's approval, unless the statements would impact upon any privileged communication with corporate counsel. The same analysis and holding is applied herein. While Defendant and Henley believe the questions Henley was asked – regarding his and other Commissioners' votes on Branson's termination and about her job performance – were improper because such discussions occurred during confidential executive session, this Court once again finds JMAA has not shown that any privileged information was provided in response to the questions that Defendant contends were improper. Moreover, JMAA has not shown how any information learned by plaintiff's counsel would not be subject to disclosure and eventually produced during proper discovery, through depositions, interrogatories, or other witnesses.

Notwithstanding the foregoing, this Court now considers sanctions against Attorney Farrell under Rule 4.4(a). Defendant asserts Attorney Farrell violated Rule 4.4(a) in his dealings with Henley and Michael Gater as unrepresented individuals, because the rule prohibits a lawyer from using "means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person." M.R.P.C. 4.4(a). The subject rule governs respect for rights of third persons and based on a reading of the Comment to the rule and cases citing to rule, it appears this rule is most commonly referenced when allegations of dishonesty, fraud, deceit or misrepresentation by an attorney arise. Such is not the case here. However, the Court takes this opportunity to point out that the Plaintiff was aware that Defendant regarded both Henley and Michael Gater "an individual[s] likely to have

25

discoverable information that the disclosing party may use to support their claims or defenses," and that both "**may be contacted through counsel**," as this language was expressly provided in *Defendants Jackson Municipal Airport Authority and LaWanda Harris's Pre-Discovery Disclosures of Core Information*, which it served on Plaintiff on August 13, 2022, as evidenced by the Notice of Service [21], filed with this Court.

In her Response [73], Plaintiff offers no explanation for why she elected to ignore the notations in Defendant's pre-discovery disclosures, and instead pursue *ex parte* communications with Henley and Michael Gater. Plaintiff excuses her actions by informing this Court that Attorney Farrell suggested to JMAA's counsel, **after Defendant learned of the *ex parte* conduct**, that the parties prepare an agreed protective order to prohibit questions into privileged areas. Plaintiff cannot genuinely believe this suggestion would satisfy the Defendant. This Court points out that several of the Mississippi cases cited on this issue were before the Court on a plaintiff's motion for leave to conduct *ex parte* interviews with former employees. It can be said that a request in advance of the *ex parte* contact evinces a showing of good faith and mutual respect for fellow legal counsel. The undersigned is of the opinion that Attorney Farrell lands on luck here, having avoided sanctions. The allegations that Attorney Farrell repeatedly contacted Henley after he requested the contact cease and also prepared an affidavit that allegedly distorted Henley's statements, are nothing short of astonishing, but unfortunately not sanctionable under the requested relief.

As to the remaining relief sought by Defendant, the Court finds Defendant's request for protective order is well-taken. In light of the discovery disputes, the undersigned finds the *ex parte* interview framework provided in *United States v. Mississippi* in line for use in the instant action, as the Defendant herein has requested similar relief. The Court grants the following relief:

 a. Attorney Farrell and Plaintiff's other attorneys (including any future attorneys given the pending withdrawal motions) are prohibited from any future contact with

26

Defendants, Defendant JMAA's current Commissioners, Defendant JMAA's former Commissioners who were involved in Plaintiff's termination, Defendant JMAA's current employees who fall under Rule 4.2's protections including CEO Paul Brown, and Defendant JMAA's former high-level employees who were directly involved in Plaintiff's termination and who were privy to privileged information and litigation strategy including Michael Gater; and

b. Attorney Farrell provide to the Court and undersigned counsel the names of any individuals that he shared any information gathered from these improper communications with and what he shared. Said information shall be provided on or before January 13, 2023.

The Court denies Defendant's request to have Attorney Farrell produce the originals and any copies of notes, recordings, emails, or any other documentation of contact with the above-referenced individuals, as the requested documentation constitutes work product and is not ordinarily discoverable. *United States v. Mississippi* at *5 (citing S.E.C. v. Brady, 238 F.R.D. 429, 442 (N.D. Tex. 2006). Defendant "has not demonstrated a substantial need for the [documentation] or an inability to obtain the substantial equivalent without undue hardship. Absent such a showing, or a showing of compelling need if the document sought is opinion work product, the work product doctrine shields such documents from production." *Id*. The Court also denies Defendant's request that "Plaintiff be prohibited from using any information gathered from these improper communications in this litigation." The Court has not found that communications were improper, therefore, it declines to impose the requested prohibition of use of the information.

## CONCLUSION

IT IS THEREFORE ORDERED that the Defendants Motion for Leave to Amend Answer and Affirmative Defenses [57] is GRANTED.

IT IS FURTHER ORDERED that the Motion for Protective Order [67] is rendered MOOT.

IT IS FURTHER ORDERED that the Motion for Relief Regarding Discovery Violations [70] is GRANTED in part and DENIED in part. Defendant's requests for sanctions

against Attorney Farrell is denied, and the motion for protective order is granted in accordance with the above order.  Attorney Farrell is directed to provide the Court and counsel opposite with the information required in the protective order on or before January 13, 2023.

IT IS FURTHER ORDERED, the Motions of Counsel to Withdraw [66] and [68] are GRANTED.

**SO ORDERED**, this the 30th day of December, 2022.

 /s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE