# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ARNETRIUS BRANSON**,

        *Plaintiff*,

v.

**JACKSON MUNICIPAL AIRPORT AUTHORITY, et al.,**

        *Defendants*.

CAUSE NO. 3:21-CV-100-CWR-LGI

## ORDER

Defendants Jackson Municipal Airport Authority and LaWanda Harris seek summary judgment on plaintiff Arnetrius Branson's claims. Docket No. 106. JMAA also seeks summary judgment on its counterclaims. Docket No. 108. Branson opposes both motions.

Having reviewed the evidence, arguments, and applicable law, the Court: (1) grants in part and denies in part the defendants' motion for summary judgment on Branson's federal cause of action, and (2) defers resolution of the defendants' state-law motions.

### I. Factual and Procedural History

Arnetrius Branson started working for the Jackson Municipal Airport Authority (JMAA) in 2002. She was an accounting and finance manager. In 2015, Branson was promoted to Chief Financial Officer. She resigned in 2020 in lieu of termination.

In this suit, Branson alleges that she was forced out for insisting that JMAA Board Members comply with tax laws. Branson claims that she: (1) repeatedly asked Board Members to fill out W-9 forms for their per diem payments (though not all Board Members

complied); (2) issued 1099s to the IRS for the Board Members' per diem payments; (3) questioned the business purpose of the Board Vice Chair's trip from Maui to Honolulu; and (4) prevented JMAA's outside counsel from reimbursing travel expenses incurred by JMAA CEO applicants.

Branson says that the federal tax issues particularly rendered her persona non grata with the Board and its Chair, LaWanda Harris. Specifically, Branson testified that Harris told her "she didn't want to pay taxes on the [per diem] money, she didn't want to report it." Harris in fact tried to reject the 1099, claiming that she would repay the per diem rather than have it reported as taxable income. But Harris did not repay the per diem.

In January and February 2020, therefore, Branson submitted 1099s for all Board Members to the IRS and the Mississippi Department of Revenue. That was the last straw. The Board called a special meeting and effectively fired Branson. JMAA's new CEO explained to Branson[1] that Harris "was very sensitive and displeased" with receiving a 1099, and the Board was under pressure from Mayor Chokwe Antar Lumumba to keep a low profile about the per diem payments. *See* Docket No. 106-1 at 5 and 9. The CEO offered Branson a choice of signing a pre-typed resignation letter or a pre-typed termination letter. She chose the former.

This suit followed. In her complaint, Branson claimed that the defendants violated the Taxpayer First Act, *see* 26 U.S.C. § 7623(d), and various provisions of Mississippi law. After receiving certain discovery, JMAA then counterclaimed against Branson for breach of

---

[1] Branson says she recorded this conversation.

contract, breach of fiduciary duty, and conversion. Discovery has closed and the present motions are ready for review.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III. Discussion

### A. Branson's Federal Cause of Action

The Taxpayer First Act protects whistleblowers from retaliation when they provide authorities with information about tax misconduct. *See* 26 U.S.C. § 7623(d). More specifically, and as relevant here, the Act prohibits retaliating against employees when they:

3

>provide information, cause information to be provided, or otherwise assist in an investigation regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud, when the information or assistance is provided to the Internal Revenue Service, . . . a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct.

*Id.* § 7623(d)(1)(A).

Section (d)(2)(B) of the Taxpayer First Act incorporates the rules, procedures, and burden-shifting framework Congress set forth in another whistleblower-protection statute—one about aviation safety. *See* 49 U.S.C. § 42121(b). That law, in turn, places upon the whistleblower the burden to prove that their protected activities were "a contributing factor in the unfavorable personnel action." *Id.* § 42121(b)(2)(B)(iii). If they do so, they are entitled to relief unless "the employer demonstrates by clear and convincing evidence that [it] would have taken the same unfavorable personnel action in the absence of that [protected] behavior." *Id.* § 42121(b)(2)(B)(iv).

In this Circuit, "a contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Ameristar Airways, Inc. v. Admin. Rev. Bd., U.S. Dep't of Lab.*, 650 F.3d 562, 567 (5th Cir. 2011) (quotation marks and citation omitted).

The defendants lodge a variety of arguments against Branson's Taxpayer First Act claim. They begin by asserting that Branson cannot proceed because she didn't provide information for or otherwise assist "in an investigation." Such a reading of the law, though, would eviscerate any protection for whistleblowers who provide the first report of tax fraud—persons whose tips or information *lead to* formal investigations by the government or

4

an employer. Nothing in the statute supports such a myopic or perverse view of whistleblower protection.

The defendants then claim Branson didn't present her tax grievances to an appropriate supervisor or other person with authority.[2] But the evidence backs up the argument only in part. Branson did, in fact, report the W-9 and 1099 issues to then-CEO Paul Brown and Board Members. Docket No. 106-1 at 4 and 13-16. She also reported the Hawaiian excursion to then-CEO Darion Warren. *Id.* at 8 and 12. Less clear is the adequacy of Branson's complaint about unlawful travel reimbursement of CEO candidates, which she reported to JMAA's outside counsel.[3] *Id.* at 51-53. But it is not necessary to decide the appropriateness of that disclosure, for reasons that will become apparent immediately below.

The defendants are on firmer footing when they argue that Branson's complaints were not all about federal tax issues. Her concerns about the Vice Chair's Hawaiian excursion and reimbursement of CEO candidates' travel reimbursement appear to be state-law concerns. Although it is undoubtedly important to comply with state law, it is not apparent that reporting those compliance deficiencies is protected by the *federal* Taxpayer First Act. As a result, those disclosures will not be considered further in this section.

What remains are the federal tax forms. The defendants emphasize that Branson was wrong to badger Board Members to complete W-9s, because those forms were unnecessary. That argument elides Branson's role in issuing the 1099s, but the Court acknowledges that it

---

[2] In one sense, Branson clears this hurdle because she provided information to an authority listed in the statute—the IRS—when she issued the 1099s.
[3] Outside counsel then copied Harris on the ensuing email chain, so it is true that Harris had knowledge of the concern.

is one interpretation of the record. Another view of the evidence, though, is that Harris's refusal to submit a simple W-9 was an early red flag.

Consider the entirety of the record evidence, which must be construed in favor of the nonmovant. The Chair of the Board—defendant Harris—repeatedly refused to fill out a W-9 for per diem payments. She directed Branson to not issue a 1099 to the IRS reflecting those payments. She then tried to refuse the 1099, claiming that she would repay the per diems. *Id.* at 31. Yet she never repaid the per diems. In context, the W-9 obstinance bolsters Branson's suspicion that Harris was attempting to evade federal taxes. So Branson did her duty and reported the income to the IRS. She was fired immediately afterward. This evidence sets forth a prima facie violation of the Taxpayer First Act.

The defendants' remaining arguments fail to persuade. Despite their protestations, there is ample summary-judgment evidence supporting causation. Most critically, Branson has direct evidence from the CEO that she was fired because she submitted 1099s to the IRS. *See Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994) (defining "direct evidence" in employment disputes). And the temporal proximity alone is so close that it too indicates causation sufficient to satisfy Branson's prima facie case. *See Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (holding that a time lapse of up to four months satisfies the causal connection for summary judgment purposes). "It is not unreasonable for a trier of fact to think this timeline gives rise to a natural inference of cause and effect." *Ameristar Airways*, 650 F.3d at 569.

For these reasons, Branson has made out her prima facie case of a Taxpayer First Act violation.

According to the defendants' motion, the next step is to consider their affirmative defense. Docket No. 107 at 9. They claim they prevail because they have presented clear and convincing evidence that Branson "would have been terminated anyway." *Id.* at 14 (citing 49 U.S.C. § 42121(b)(2)(B)(ii)).

The defendants point to emails and sworn statements purportedly showing Branson to be an unsatisfactory CFO. "[M]any bills," the defendants assert, "were not being timely paid, including the electricity, gas, phones, and internet bills, resulting in interruptions in service or disconnection notices." Docket No. 107 at 1. There were errors in JMAA's leases with its largest airlines. And restricted funds were incorrectly deposited into an unrestricted account. After these mistakes were discovered in 2019 and early 2020—just as the 1099 issue was gathering steam, it turns out—Branson was deflecting and refusing her employer's entreaties to take accountability for and fix the problems. As a result, the defendants say they would have taken the same unfavorable personnel action against Branson.

Branson responds that she was blamed for others' incompetence. The recurring billing issues were the responsibility of the procurement department, which reported to the Chief Administrative Officer, not the CFO. Airline leases fell to the properties manager or Chief Commercial Officer, not her, and she denies any role in the deposit error. Branson has attached emails and other documents professing to support her view of the chain of command, and asserts that the properties manager was never disciplined for his errors. To all this, the defendants assert that ultimately the buck stopped with Branson. *Id.* at 1 and 14.

The applicable evidentiary standard is well-established.

> Clear and convincing evidence is weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. It is evidence so clear, direct and weighty and

7

> convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts. We have concluded that mere speculation does not meet the clear and convincing burden. . . .
>
> If there are equally plausible explanations for the outcome, a party did not sustain its burden of proving clear and convincing evidence.

*Galaviz v. Reyes*, 84 F.4th 389, 393, 395 (5th Cir. 2023) (quotation marks and citations omitted).

Upon review, the Court cannot say that the defendants' reasons constitute a more likely explanation for Branson's termination than her decision to issue 1099s. The parties' competing explanations—incompetence versus retaliation—are supported by portions of the record. In addition, both explanations percolated on similar timelines, which renders them difficult to untangle. But Branson has presented direct evidence of retaliatory motive and other evidence that the identified problems were not her responsibility. If the fact-finder believes her evidence, it may discount the defendants' other explanations as pretextual or "a mere litigation figment." *Ameristar Airways*, 650 F.3d at 569-70 (explaining that a plaintiff can present evidence of pretext to defend against an employer's claim that she would have been terminated in the absence of protected activity).

This Court, in sum, cannot reach the level of certainty necessary to find the defendants' evidence clear and convincing. A jury must be empaneled to determine which perspective is more credible.

As such, the defendants' motion for summary judgment is denied on this claim.[4]

**B.     The State-Law Causes of Action**

That leaves the defendants' motion for summary judgment on Branson's state-law claims and JMAA's motion for summary judgment on its counterclaims against Branson. The

---

[4] The defendants' limitation of damages argument will be resolved only if a trial is ultimately necessary.

Court will defer resolution of those motions. If Harris is entitled to an interlocutory appeal on the federal cause of action and the Fifth Circuit reverses that claim in her favor, then it may be appropriate for this Court, upon remand, to decline supplemental jurisdiction. *See Certain Underwriters at Lloyd's, London v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). Such an analysis would be premature today.

**IV.  Conclusion**

The motion for summary judgment on Branson's federal claim is granted in part and denied in part. Ruling on all other arguments and motions is deferred pending a potential interlocutory appeal by Harris on the federal cause of action.

**SO ORDERED**, this the 24th day of June, 2024.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE